May it please the Court, my name is Ramsey Nasser from the Federal Defenders of San Diego, and I represent Fernando Martinez-Gonzalez. It is our contention today that Mr. Martinez-Gonzalez is currently serving a 63-month sentence based on a conviction that violated the Sixth Amendment. It's my intention to talk about the theory of defense instruction and also the fact that his conviction violated Shelton today. I'll submit my briefs on the other arguments unless this panel has specific questions. Beginning with the theory of defense instruction, the instruction that was given in this case did not adequately instruct the jury as to the defendant's defense. The instruction merely said that the defendant contended that he had made a mistake of fact as to whether or not his visa was valid. The instruction did not say that this mistake of fact indeed showed him to be not guilty of the offense. Are we on plain error review here? Was the objection preserved? Your Honor, I believe that the objection was indeed preserved. I wish I had been clearer in citing to the record in my briefs, but on page 89 through 90 of the Exeter record, it's clear what it is that happened in this case, which is that the defense counsel submitted this instruction to the Court, and the defense counsel said, I have this instruction and I have cited to cases. It is indeed my theory of defense. And he argues that the case that he cites, Mason, is the exact same case that we're arguing here as the case mandating that the theory of defense was given. At that time, the district court judge says, okay, I'll give the theory of defense. And the government counsel stands up and says, I object. I object because the theory of defense is adequately covered by other instructions. And at that point, the judge agrees and indeed gives the instruction minus the two sentences based on the government objection. And by doing so, he eliminates the reason that the theory of defense leads to an acquittal in this case if the jury believes his story. All the Court says in this case is that the defense contends that he didn't have a conscious desire to enter without permission. Because he'd made this mistake of fact. And it's a – I think that Crescides-Oliveri shows that it's a very complicated matter whether or not a mistake of fact is in fact going to make you not guilty of the offense. Simply telling the jury, and he does this on page 93 of the excerpt and 102 of the excerpt when he's giving them the elements of the offense, that the government has to prove he has a conscious desire to reenter without permission, and then again that the government has to prove that the defendant has the purpose, i.e., the conscious desire to reenter without permission, well, that alone isn't showing them that a mistake of fact is a defense. It's unclear whether conscious desire is something that relates to simply having a conscious desire to enter or whether the conscious desire relates to being without permission. In addition, the whole idea of having a conscious desire not to have permission doesn't really make any sense. Indeed, people all over the world can have the conscious desire to have permission to enter the United States. That doesn't make them not guilty of illegal entry. The key fact here is that a mistake of fact, as shown in Crescides-Oliveri, that that mistake of fact negatives the intent here. And that's exactly what it was that trial counsel asked for, and that's exactly what the Court denied him. It denied him his theory of defense and didn't properly instruct the jury. I think we're in agreement, at least on the law of, at least somewhat, on what law you should use to decide what happens. And the standard is, though they would say it was plain error, the standard is going to be whether the instruction given adequately covers the defense theory. The cases that the government cites for the proposition that the jury doesn't have to be told that they must acquit or that the jury doesn't have to be told the instructions in a way that puts too much emphasis on the defense case, all of those are cases that merely go back to the rule that says that if this defense is adequately covered by other instructions, if that is the case, then it doesn't need to be given. Well, here the defense was not adequately given by other instructions, and that's what we would contend. So I'll move on to the next issue. Another reason that this conviction violated the Sixth Amendment is because it occurred in violation of Shelton, which is a new Supreme Court decision that happened before this trial, that an individual cannot have their sentence enhanced or, I'm sorry, cannot be convicted because of a prior proceeding that was on counsel. Shelton created this new rule. What happened in Shelton is an individual was given a suspended sentence, and they challenged the suspended sentence. Okay, but we're dealing with civil proceeding here, aren't we? Not a deportation, not conviction. Well, that's correct, Your Honor. It is in a sense a civil proceeding, but I'm not sure I would absolutely disagree, agree with you respectfully. I think the Supreme Court, in its recent sex offender cases, I wish I had the site with me. I'll provide it at a later time, has said that simply by calling something civil or criminal, that isn't going to conclude whether or not it's civil or criminal. I think that it should. Well, okay, but isn't it clear that the right to counsel does not apply to a deportation proceeding? In other words, there is no compulsory right. Yes, I would agree to that on its own. But doesn't that answer the question here? No, it doesn't. It used to before Shelton came out, because back before Shelton, we had Nichols, and with Nichols, the mere idea that a person didn't get imprisoned as a result of the proceeding meant that it was not criminal, and that's what the rule was. And that was the rule at the time that the case the government cites, Lara, was decided. They're relying there on Nichols and the preceding cases. However, after Shelton, the test was finally enunciated, and that test as to whether you're going to be allowed to do this to an individual is whether that proceeding results in imprisonment, not merely if that proceeding enhances the sentence. Under Shelton, that's still okay, and that's basically what they limited Nichols to. But we're not talking about a mere sentencing enhancement. Before this deportation or without this deportation, this individual could not be convicted at all of the crime that he was convicted of. He was convicted of felony illegal entry after deportation and subject to 63 months' imprisonment. And that was a direct result of the fact that he was deported or the deportation proceeding. And Shelton says that's not okay. It's not okay for there to be an uncounseled proceeding that leads to that kind of sentence. As I was saying earlier, I think that this is most clear that Shelton makes this difference by looking at the text of Roble's Sandoval. There's two cases that the government cites for the proposition that what happened is perfectly fine for a sentence to be enhanced based on these two prior – based on this previous proceeding, and that's Roble's Sandoval and Lara. Well, all Lara really does is it goes back to Roble's Sandoval and it cites Roble's Sandoval. What Roble's Sandoval says is they say that the individual who tried to make this same argument before, they really don't have any authority because all that's around is the Supreme Court case of Balthazar. And they say, well, Balthazar doesn't really have a holding. There's three different opinions and it's really unclear what it is that the Court's trying to say. So since there's no clear law in this area, there's really no authority and there's no rule that they can rely on. Well, that's just not true anymore after Shelton. Shelton makes very clear what the limitations of Nichols are and it makes a clear rule that what makes a difference is potential for punishment. And when there's potential for punishment, that is when it happens – that's – and when you can actually have a conviction based on that prior proceeding as opposed to simply an enhancement of the sentence, that's what's unconstitutional and violates the Sixth Amendment. And I guess since I have a little more time, maybe I'll – well, I'll reserve the rest of the time for rebuttal. Thank you. Thank you, Court. May it please the Court, Mark Brady for the United States in this matter. Your Honors, there was no error in the theory of defense instruction that was given by the Court below. As defense counsel pointed out, the guiding inquiry in this issue is whether the instructions as a whole adequately covered the defenseless theory of the case. And we cite law in our papers that the defendant is not entitled to the precise wording of his choice and that the actual formulation of a theory of defense instruction is within the broad discretion of the district court. Now, in this case, this is not the kind of case where a complete failure to give an instruction is present. The defense submitted three sentences. The district court actually read the first two verbatim. It's only one sentence that we're talking about, the last one, which is that if you find that the defendant made this mistake, you must find him not guilty. But looking again to the guiding inquiry, whether the instructions as a whole are adequate, the government would point out that there are basically three steps which lead to a conclusion. In fact, compel a conclusion that there was no abuse of discretion here. Was their last sentence an erroneous statement of the law? I think that it could very well be seen as that. And that's an alternative holding. In this way, I don't think the government will dispute that for a specific intent, crime in the sake of fact can be a defense. That's a general proposition. But in this case, I don't know necessarily that just because a jury would find, I mean, what they asked for was if the jury believes that he mistakenly thought this green card was valid, that he therefore is not guilty, I think the jury could still have found that, okay, he's got this green card. It was never surrendered by him. It has a facial expiration date of June 2002. That's one side of the story. But then we have all this other evidence that at the time of his deportation, the government submitted a transcript of the immigration judge hearing. That was admitted in evidence. The defendant was expressly warned that if you do not appeal my decision, you will lose. But then doesn't that go to the correctness of their contention rather than if they're correct? I mean, how could he have believed the first sentences? He submits that he made a mistake by believing that it was valid. What you're arguing now, it seems to me, is that the evidence is that he couldn't have believed it's valid. So I don't see how that responds to Judge Fisher's question, which is if he believed that it was a mistake, that it was valid, then is it wrong to say that he's not guilty? I think there's something that's missing from the instruction, and that is that the conscience desire to enter without the express consent of the attorney general, just because he believes his card is valid, I don't know that that necessarily automatically means he believes he has consent. When the evidence shows that he was deported, that he was warned that he would lose his legal residence status forever unless he appealed, and when he actually signed a warning that's in the evidence, I believe it's I-294, which says you cannot come back unless you go through X, Y, and Z procedures, he fingerprinted that, he signed that. I mean, I'm just saying, I think there's an --- My question, doesn't that go to say that he can't believe he still has the right to be a permanent resident of the United States? I mean, there might be some worry, Your Honor. I understand. I think what Your Honor is saying is what I'm saying. Doesn't that basically just go to the weight of the evidence? But an instruction has to have a foundation in the law. And to say that just because somebody believes this one little facet of the evidence, they must therefore ---- No, no. On that one little facet, he believes that he is a lawful permanent resident and has a valid card saying he is a lawful permanent resident. I mean, the instruction just said that he believed that the card was valid, Your Honor. It didn't say that he also believed he was a permanent resident. Well, his legal permanent resident card was valid. How could you believe you have a valid permanent resident card and not believe you're still a permanent resident if the card's valid? Because we would say, I mean, he had been deported 11 months before. He was told that he would lose his status. I agree with you. That's a good argument as to why he couldn't have believed that he still had a valid card. But I think ---- But that's a different argument. You're saying you don't give the ---- you don't have to give the defense theory if there's not a scintilla of evidence that supports the theory. I will say this, Your Honor. I agree that's not my strongest argument. And that is an alternative argument, that that last sentence didn't correctly state the law. The thing that I really want to stand on here today is that the instructions as they were given were adequate. And I believe so basically for a three-step process. And the first is that the judge correctly cited the affirmative elements of the crime under Gracias Ulibarri. One of those elements was that the defendant had the specific intent, i.e., the conscious desire to enter the United States without the express consent of the Attorney General. The very next instruction that the Court gave was the theory of defense, putting it in proper context. And he didn't ---- the Court didn't just say the theory of defense is that he thought he made a mistake. The Court said the theory of defense is that he is not guilty because he did not enter ---- he did not consciously desire to enter without the express consent of the Attorney General, period. He believed his card was invalid. Now, that first sentence that the judge read expressly incorporated the exact phrasing of the affirmative element of specific intent. And it followed immediately after the judge gave that instruction. And finally, elsewhere in the instructions, right around the same time, the Court said the government bears the burden of proving each element beyond a reasonable doubt. And the Court also said if you find that the court ---- that the government has not met this burden, you must find the defendant not guilty. When you look at all of those instructions that were given in a very close proximity to each other, again, I don't see how it can be said that the district court abused its discretion, basically saying, look, it's an element. The government has to prove specific intent, express purpose to come in without the consent of the Attorney General. Immediately thereafter says the defendant contests that he had this express consent or contests that he had this desire to come in without the express consent, and then to later tell the jury, you have to find not guilty if you don't believe that the government has met its burden. And there's another thing I think it bears pointing out. I know Judge O'Scanlan, I believe, brought up whether this was even properly preserved. And we contend that all of this should be viewed within the prism of plain error. Because I do not believe that even a fair reading of the record shows that this claim was preserved. Yes, the defense submitted written instructions which was compliant with the Federal Rule of Criminal Procedure 30. That's what it requires, that the parties submit written instructions. But then that, the plain language of that rule goes on to say, no error can be predicated on any failure, any omission from the jury unless, and this is a direct quote, the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection. That is not present here. The defense counsel submitted its instruction, which have the three sentences. The district court said, I'm going to read the first two, but not the third one. And then the defense counsel just said, fine, thank you. There's no reason. All of this is a fascinating discussion. There's not a single word of it mentioned below. And I think that's the whole policy that animates the plain error rule. These kind of arguments, the argument that appellate counsel is making now that this wasn't a complete defense instruction, that should have been raised below. And it clearly wasn't. Do you know of any cases, either way, would say directly that you, it's improper to give an instruction or you're required to give an instruction that gives you the consequences with the defense theory, that if, like the last sentence here, do you have any cases where the defense theory? I don't, Your Honor. In fact, I think on footnote 12 of my brief, I basically, I did a survey of the case law myself. There's no one black-letter rule one way or the other. The cases that I cite on page 17, footnote 12, were ones where empirically I call that a trigger sentence. The last sentence, if you believe X, you must acquit. It wasn't given and the Court did not find error. Now, from those, I can't say that it will always not be error, but I think at least it shows that it's basically consistent with the abuse of discretion and formulation. In that ---- Kennedy, when you say there are trigger sentences, do you mean that there are cases where somebody asked for that kind of a last sentence and the Court said it was not error to omit it? Correct, Your Honor. That's how I read it. In fact, the one Ninth Circuit case I cited was Warren, which is at 25 F. 3890. And the way I read that was that the district court did not err by refusing to instruct the jury that if it adopted the defense theory, it, quote, must find the defendant not guilty. So, again, though, I think the thing to keep in mind here is whether the instructions were adequate as a whole. The jury was told if the government did not meet its burden beyond a reasonable doubt, it must find the defendant not guilty. Counsel, did you say Moorman or Morgan? Warren. Oh, Warren. Warren, yes. And again, that ---- Okay. Perfect. I think that was on page 17 of that. I got it. Hold on. And the reason, again, I bring up plain error is because one will ask, well, what's the point of that? I think then the defendant bears the burden of persuasion on prejudice. And the thing I want to point out, to whatever extent it comes up as far as the equities of this case, as we pointed out, defense was given broad reign to argue this theory in closing argument. The prosecutor never objected once. The district court placed no limits on the argument. In fact, I think the entirety of the defense argument was towards the specific intent question. And with the defense argument that he thought his card was valid. He had used it seven or eight times before. Therefore, you know, I think there was even a quote that the law doesn't commit people who make honest mistakes. Therefore, you must find the defendant. And in the closing argument, the prosecutor didn't say anything to suggest to the jury that that would not be an appropriate defense. No. All she did was take the defense on as facts. And that's where she used the analogy of a driver's license. If somebody has a suspended driver's license, but for whatever reason the DMV does not have an actual, does not have the actual license, that shouldn't excuse them from then going ahead and driving down the freeway, knowing that it's been suspended. But again, I think the clerk's record below shows also that the jury, the deliberations in this case were just two hours. There were no instructions or, I'm sorry, there were no questions from the jury to suggest that they were in any way confused by the instructions, which I know is another guiding point. So unless the Court has any further questions on that first issue, I believe I'll move on to the second issue that the defense raised. And as far as that, Your Honor, the government stands behind the, I believe it's Laura Aceves, is the main case. I mean, we should be. Kennedy. Well, counsel relied very heavily on a case that seems not to be in the briefs. Was it decided after the briefing? I believe it was. And actually, in fairness to defense counsel, I believe that they did cite in a letter Alabama v. Shelton. Well, I think they have Shelton in their brief. They didn't address it again in their reply brief. Alabama v. Shelton. But it actually is in their brief. I mean, my main response was I was a little confused at first because I thought the first case I know they cited was Apprendi, and I thought the whole idea of this was the proposition is stating that you cannot use an uncounseled administrative proceeding. I don't think Apprendi goes to that. But the main point we point out with Shelton is that is based on a criminal context. And as Judge O'Skin pointed out, a deportation proceeding is civil in nature. This Court has never held that there is a right to appoint a counsel. You can retain counsel, sure, in an immigration proceeding, but you don't have the guaranteed right. And yet, I believe even Robles-Sandoval is the case, the earlier case that Laura Aceves relied on, where the same argument was basically made, trying to make an immigration proceeding. And in that case, this Court held that that's an entirely different proceeding that was an apposite. But another thing I also want to point out, though, is a lot of this argument, I think, is made on a theoretical level. As we pointed out in our briefs, you know, where really is the prejudice? If you look to the facts of this case, again, as I pointed out earlier, there was a transcript of the actual immigration judge hearing below. And oftentimes, you know, this argument, I think, finds greater strength if the record is bad on the waiver of counsel. But in this case, I don't think it could be stronger. Because in this defendant's particular immigration or deportation hearing, the judge initially made a group address to the group of people and said, you know, if you want to have a lawyer here, if you want to provide one yourself, you can. Does anybody want to do that? Nobody indicated that they did. Now, when Mr. Martinez-Gonzalez was then later individually addressed by the immigration judge, he went over that yet one more time. And again, I believe this is on page 32 of the government's brief. He states very clearly, Mr. Martinez, I told you earlier you have the right to be represented. Do you understand your rights to be represented? Yes, sir. Do you have an attorney? Sir, no. Would you like more time to get an attorney? Nothing. No. Are you ready, then, to represent yourself here today? And Mr. Martinez said, yes, to say what I'm going to say, I can say it myself. So I think even assuming that there is legal foundation for the defense argument, which I don't believe there is, because Laura Sevis and Robla Sandoval had not been criticized, limited or overruled on the facts, I don't think there's any grounds for this claim, because here you have an individual who I believe, as the record is stated, that meets this circuit's standards for knowing and intelligent voluntary labor counsel. So I don't see how there can be any derogation of the Sixth Amendment rights in this particular case. And I don't know if the Court had questions on any of the other issues that were brought up by the defense, but if not, I would submit on that, Your Honor. Thank you. Good morning. Again, I want to respond to many of the points that Mr. Rahe made. Initially, in regards to the merits of our theory of defense claim, Mr. Rahe says, well, the jury here was told that he had the specific intent, and so that should be enough. And, you know, from there they can infer that a mistake would negative that specific intent. But that's exactly what the government tried to argue in Mason. The government said, okay, well, the jury was informed about specific intent here, so there's really no error on not informing them about the theory of defense. And this Court rejected that idea. They said that it simply wasn't clear to the jury that this defense, and the defense there was that the defendant was authorized by the government, that they had public authority to do what they were doing, that that defense meant that they would be not guilty of the crime if the jury believed it. And that is just the case here. As I mentioned earlier, conscious desire can be read several different ways. Conscious desire can — is one thing, and purpose is another thing. But the key here is the finding in Prestigious-Oliveri, and as I said before, it took an event panel of this Court to read the words of that statute and decide that a mistake of fact is not something that — or is something that makes you not guilty of an attempted entry. It's not something that makes you not guilty of being found in the United States. I think that, for example, for a found-in offense, in that case, having a mistake of fact isn't something that is going to make you not guilty. I think that the jury would need to be instructed on this complex legal proceeding. Now, as to the idea that this was not preserved, as I argued before, most of our argument here comes from Mason. And just pointing out again what it is that happened in the record, the trial counsel cited to the case, they cited to Mason when they submitted their proposed instruction, and they pointed out again to the judge saying that it is their theory of defense. And the government objected. At that point, the Court made its ruling, and it said, and I'm going to quote the district court here, they ruled that they're taking out the last sentence, and then the district court states, I will file instruction number two, defendants' proposed instruction number two, and number three for the record of the case, and I will give the portion of defendants' proposed instruction number three, but I will delete the last sentence. And then at that point, Mr. Petrick, the trial counsel, says, okay, thank you. I think that the district court is saying I've ruled on this. He's saying I'm going to file these as of record for the record. What does that mean if not this is something that you are indeed trying to preserve? I don't think that what it is that was stated was very clear. And I'm glad that this panel is asking Mr. Leahy about authorities in this matter, to which he cites Warren, saying that Warren stands for the proposition that the jury never has to be told that they have to acquit if they believe the defense theory. And that's what I was trying to get to earlier. That footnote that he read, that he cited, does sound really good in terms of the statement that he made, saying that every single circuit states that juries don't have to be told that the theory of defense is something that would lead to an acquittal. But I'm confident that when this panel goes back and pulls up that cite in Warren, all it's going to tell you is that that particular instruction that was cited was adequately covered by other parts of the defense's instruction. It's not the case that the Court in Warren struck out the mere sentence that the jury would have to acquit if they believed the defense theory. That's not what happened in Warren at all. And I don't believe, though I can't say with as much confidence, but to my recollection, that's not what happened in any of the cases that are cited in those footnotes. That's why they're in a footnote. Do you have any case in which a court has said that the failure to say to the jury after you say here's his theory, do you have any cases where a court has said you then have to say if you believe that theory, you acquit? Well, I'll have to. I mean, I'm in the same position as Mr. Rahey in that I didn't find a case that was directly on point. What we cite to in our brief for that proposition is the Supreme Court's case of Gowden. And I will admit that that was not a situation where the facts such as these were presented. They merely said that the defendant had a constitutional right to have the jury instructed on the facts of their defense, or not on the facts of their defense, but on how those facts apply to the law. And we're citing Gowden for that proposition. But see, what you're really saying is you've got to tell the jury not only is this the defense's theory, but it's a valid, legitimate theory, and he wins if he establishes it. Well, I think that the statement of Gowden, and I think fundamental in the Sixth Amendment, is that you're you have a right not simply to have the jury be told this is what defense contends, but you have a right to have the jury be told what the law is on what it is that you are contending. I think that that's very clear. If the instruction is read, all the instruction says is the defense contends X. The defense contends that this mistake of fact was made. It doesn't say anything about, so, what does that what does the fact that that mistake of fact happened mean? The jury is told that the government has to prove that he consciously desired to illegally enter without permission. But, again, as I've been arguing before, and I hope that you're somewhat convinced by this, it's really unclear what consciously desires modifies, and also it's really unclear as to what it could mean to have the purpose to not have permission. The key jump that needs to be made and the key jump in the law is that a mistake of fact negatives specific intent, and that's a difficult and complicated legal principle that the jury was never told. And we submitted this to the district court, and the district court stated that they were going to give it, or at least appear to, and the government objected, saying exactly what it is that they're saying now. They objected, saying this is adequately covered by the other instructions. And the judge said, I agree with you, government, but I'll file this instruction of record. I think that that's a long way to go. I think the court passed on it. The government had a chance to argue about it below, and they won on it. And that's why we're here now. As to this idea about him having a mistake about whether it's valid, I just think that that really stretches the meaning of the word valid. If he thought it was valid, I think implicit in that is that he thought that it was he thought that he had permission to enter. The government didn't say below, oh, this is a misstatement of law. What the government said below was, as they're saying now, this is adequately covered by the other instructions. And so they can't come up here now and say, oh, it was simply an invalid statement of law. And I don't think that it didn't seem the government was very committed to that position. Now, just in furthering the something that I didn't think was that important in that this panel asked Mr. Rahe, if anything was said in closing, to suggest that it was invalid. And, you know, I'm not implicating the prosecutor below saying that they misstated the law to the jury or anything, but it certainly was an issue. The government submitted a supplemental record, and on page 54 of that record, she says, the trial counsel, government counsel says, the defendant said, yes, I've been deported, and he was referred to secondary for further inspection. Ladies and gentlemen, that is intent. The defendant walked to the port of entry, gave this card, and intended to come to the United States. It seems to be that they are suggesting, at least in part, that what's important for the intention is simply the intent to enter. And they do later clarify a little bit, talking about, well, he didn't really commit a mistake. And then at the very beginning of defense counsel's closing, he says, yesterday I told you this was not going to be as simple as it seems. And what Ms. Flint has told you was that the only intent required is that Mr. Martinez wanted to come back to the United States. But that's not what the law requires. That's on page 62 of the government's supplemental excerpt of record. So this was something that was in contention below in the closing, and Mr. Petrick, the defense counsel, was unable to cite to the law and say, look, the judge already told you the key question as to whether or not he's guilty is whether or not he committed a mistake of fact. And with that, I'll go to the final issue, the Shelton issue. Most of the discussion here during his part was about prejudice. And I could see how that would seem very relevant under Robles-Sandoval, since they do talk a little bit about the prejudice of the deportation proceeding. But luckily, this was cleared up by Shelton, because in Shelton, there was never any discussion of whether or not he'd actually committed this assault. They don't look to prejudice. They look to the fact that there was no counsel appointed. And secondly, he talks about how there was this waiver of trial counsel. And I think that's even more on all fours with Shelton, because Shelton goes really far to talk about how this individual was warned several times, the defendant in Shelton. They were told again and again about the perils of being representing oneself. They were told about the perils. But at no time, and this is the key in Shelton, were they told that the government would provide them with an attorney. And in the Exeter record, the supplemental Exeter record, Mr. Martinez-Gonzalez is told even more. He's told you can have an attorney, but at no cost to the government. He's told the government will not provide you with an attorney. And that's the key to what's going on here. This waiver that he's talking about, well, that's after he was informed that the government wasn't going to provide him with an attorney. So there was really nothing to waive as far as he was concerned. Shelton doesn't have any discussion of prejudice. And if Mr. Martinez-Gonzalez waived, then certainly Shelton waived after all that discussion. The key was that he was not entitled to the government paying for the attorney and that he was indigent. And there's evidence that Mr. Martinez-Gonzalez was also indigent being represented by someone from Federal Defenders and also could not afford an attorney. And I guess that's it. Thank you very much. Thank you, counsel. Thank you both. The case just argued will be submitted.
judges: Reinhardt, O'scannlain, Fisher